DOE d. WILLIAM H. SWIGGETT AND CURTIS A. CONAWAY V.
RICHARD ROE, casual ejector, and JOSEPH KOLLOCK, tenant
in possession.

A search into all the writs in the Prothonotary's office is not necessary to
render the entries contained in the execution docket therein, admissible
as secondary evidence of the pre-existence, loss and contents of missing
execution process on a judgment in the Superior Court, but a diligent
search among the writs of the terms to which they were returnable, will
be sufficient for the purpose.

An objection to the levy of a *fi. fa.* on the ground that it did not include
all the lands of the defendant, or on the ground that the description of
the land contained in the levy, was too general and indefinite to identify
the land, cannot be taken after the return term of the *fi. fa.* and *inqui-
sition.*  Nor can any objection be taken to the sale of the land thereon
for the purpose of invalidating or setting it aside, after the term to which
the sale is returned.  If the objection is not taken at the return term of
the writ, the sale is affirmed as a matter of course, and is final in its
character and effect.

The provision of the statute, *Rev. Code, chap.* 111 *sec.* 48, which prescribes
the duty of the sheriff in respect to levying on land and holding inquisi-
tions, is very general in its terms and gives him great latitude in describ-
ing the land levied on   Its language is, " If there have been a levy or
seizure of land, the sheriff's return shall specify the principal improve-
ments thereon, if any, as well as the known or computed quantity, and
the situation thereof."   If there are no improvements upon it, he is to

return none in the description.  He is to state the known or computed quantity of it, and if he knows the exact quantity, it is his duty to state it; if he does not, he is required to state the estimated, computed, or reputed quantity of it    The terms "known" and " computed" are used in the act in contradistinction to each other, and have this import or signification    If in the absence of fraud, the sheriff errs in regard to the quantity, it is not material, and does not vitiate or render void the levy or return.

He is also required to state where the lands are situate, and he has done so by describing them as being in Dagsborough Hundred, Sussex County, and adjoining lands of Joseph Kollock and others.

The statute is general in its terms, and does not require a special or particular description.   A general description is sufficient, if such description identifies the land and its locality.

The description of the land levied on, as recited in the *venditioni exponas* and set out in the sheriff's deed, namely, "No. 2, a certain tract or parcel of land situate in Dagsborough Hundred and County of Sussex, containing 140 acres, more or less, and no improvements, adjoining lands of Joseph Kollock and others, a part of which is cypress swamp," is sufficient to cover and include all the lands of which the defendant in the execution died seized, situated in Dagsborough Hundred, Sussex County, which adjoined lands of Joseph Kollock and others, upon which there were no improvements at the time of the levy, and a part of which was cypress swamp.   And the fact that the tract contained more than 140 acres, will not of itself, vitiate or avoid the sale.   For where a tract of land is levied on and sold by the sheriff as a tract of so many acres more or less, the purchaser takes the whole tract without reference to the computed quantity which it is said to contain.

EJECTMENT for a tract of seventy-five acres of land in Dagsborough hundred.   This, together with another tract adjacent to it, containing one hundred and seventy-six acres, had formerly belonged to one James A. Harris in his life time, the former of which he had bought at sheriff's sale in the year 1838 on a judgment at the suit of Jesse Green against Truitt Thompson, then the owner of it, and described in the sheriff's deed as tract No. 2, containing sixty acres, more or less, and the latter of which he had before purchased by deed of bargain and sale of one Paul Thoroughgood in the year 1836.   After the death of James A. Harris, a judgment was obtained in this court in the year 1847, against his administrator at the suit of the administrator of Peter P. Harris deceased, which remained

unexecuted until the year 1852. The original writs of execution upon it could not be produced, but the counsel for the defendant called the Deputy of the Prothonotary as a witness, and proved that two diligent searches had been made for them, and that they could not be found in the office where they properly belonged. On cross examination, however, by the counsel for the plaintiff, he answered that his searches for them had been confined to the entire bundles of writs for each of the terms to which they were respectively returned, and the pigeon holes in which those bundles are kept.

Upon which he raised the objection that the search had not been sufficient, and that it should have been extended to the overhauling and inspection of all the bundles and all the writs in the office, before any secondary evidence of their previous existence and loss, or of the contents of them, could be admitted to prove them.

*But the Court* overruled the objection and held the search to be sufficient, and the secondary evidence to be admissible.

The execution docket of the office was then produced and showed, among other writs and returns upon the judgment, that an *alias fi. fa.* had been issued thereon and returned to the April Term 1851, *nulla bona* and levied on land as per inquisition, which, inquisitors say, will not rent. Also a *venditioni exponas* returned to the October Term following, " land advertised and not sold by order of the plaintiff; " and a *pluries venditioni exponas* thereon to April Term 1852, returned "land advertised and on March 2nd of the same year tract No. 2. sold to Joseph Kollock for the sum of $700, and No. 1. remained unsold for want of bidders," by Philip C. Jones, sheriff, which was followed by his deed therefor to the defendant. The description of the land levied on and sold was the same in each of the writs, and the deed was the same, and was as follows ; "No. 2. A certain tract or parcel of land situate in Dagsborough hundred and county of Sussex, containing 140 acres,

more or less, and no improvements, adjoining lands of Joseph Kollock and others, a part of which is cypress swamp." It was proved by the testimony of the plaintiff in the writs, that No. 1. or the mansion farm of the deceased was not sold, because it would rent for something for the benefit of his heirs, but the other portion was a tract of unimproved land, which would not rent for any thing, and was, therefore, sold at the sheriff's sale and bought by the defendant. It was also proved that the deed from Paul Thoroughgood to the deceased, included with a larger tract adjoining it, the tract first mentioned and now in dispute between the parties to the suit, and comprised in the whole about 250 acres. Afterward proceedings were instituted in the Orphans' Court of the county for the division of the real estate of the deceased among his heirs at law, in virtue of which, and pursuant to the order of that court, the tract of land now in dispute was sold at public sale by the trustee appointed for that purpose, and was purchased by the lessors of the plaintiff, William H. Swiggett and Curtis A. Connaway, which sale was afterward confirmed by the court, and the same being assigned to them, they thereupon entered into recognizance to pay the price bid for it, as prescribed in the recognizance. The defendant, however, attended the trustee's sale of it, and there gave public notice that he claimed to own the land exposed to sale by him, and that he had before bought it at the sheriff's sale above stated.

*Layton*, for the plaintiffs. The plaintiffs claim the tract in dispute, which contains between seventy-four and seventy five acres, by virtue of the legal title and the facts which had been proved and established before the jury in the case. The levy of the sheriff, which had been produced before them, on the lands of James A. Harris, deceased, was null and void, because he was bound to levy the execution on all his lands, when, in fact, he levied only upon a small portion of them. The levy was invalid and void as against the heirs at law of James A. Harris, for the

42

reason just stated, as well as on the ground that it was too vague, general and indefinite in the description which it professes to give of the portion even, of the lands levied on by him; and for these reasons, the plaintiffs were entitled to recover the tract in controversy between them and the defendant. 18 *Johns.* 355. 1 *Harr. & Johns.* 449. 1 *Wash.* 29. *Farmers Bank et al. v. Massey et al.* 1 *Harr.* 186.   13 *Johns.* 97. 1 *Johns. Ch Reps.* 502. *Rev. Code, chap.* 111 *secs.* 5, 30, 48.   The quantity of land which Paul Thoroughgood and wife by their deed conveyed to James A. Harris, comprised two distinct, though adjoining tracts, the one containing seventy-nine, and the other ninety seven, acres, the first as part of a tract called Houston's Addition to Hudson's Folly, and the other, as part of the tract called Confusion, making in all one hundred and seventy-six acres, which, added to the seventy-four acres now in dispute between the parties to this action, would give the defendant two hundred and fifty acres, when all his deed from Philip C. Jones, sheriff, calls for, is one hundred and forty acres; and without adding the tract of seventy-four acres in dispute between them, he would still have one hundred and seventy-six acres under his purchase at the sheriff's sale, or just thirty-six acres more than the sheriff's deed calls for.   It was, therefore, manifest that that officer never intended to sell or convey, and never did, in fact, sell and convey to him two hundred and fifty acres for one hundred and forty acres, more or less, or under that enumeration, sold and conveyed to him in addition to the other two tracts of one hundred and seventy-six acres, the tract of seventy-four acres now alone in dispute under that deed.   There was nothing in the description contained in the writs, or his deed, which necessarily included or applied to this particular tract, or implied that either that or the whole of the lands of the deceased were seized in execution and sold by him, (and which, in point of fact, were not); for unfortunately the terms of it were so general and indefinite, that they would apply with equal fitness and propriety, to any, or all of the tracts the deceased owned in that immediate locality, containing in the aggregate about one hundred and forty acres.

*Cullen,* (*Moore with him,*) *for the defendant.* It was now too late to object to the description, or to the validity of the sheriff's sale of the tract in question. For admitting for the sake of argument, that there was any defect or imperfection in the description of the land seized, or in the levy, inquisition, or in the execution of the writs in any particular, it was all cured by the return and confirmation of the sale, and deed of the sheriff executed and delivered in pursuance of it as much as fourteen years ago. For any irregularity or defect of the kind he had alluded to, could only be taken advantage of by any party prejudiced or affected by it, at the furthest, by the second term of the court after the return of the inquisition, or on the return of the sale by the sheriff and before the confirmation of it by the court. *Burton v. Wolfe,* 4 *Harr.* 221. All the cases cited on the other side, were on such applications as he had just stated. But no exception having been taken in time for such defect, if there was any, which he denied, by any of the parties concerned, either the administrator, or the heirs at law of the deceased, the law would not allow the rights, or the interests of an innocent and *bona fide* purchaser, who was not responsible for any such defect, or privy to any impropriety or illegality in the mode or manner of executing the process, to be impugned or even called in question after such a long lapse of time, and particularly by a subsequent purchaser of the premises at a public sale with full notice and knowledge of his claim and title to them.

As to the discrepancy and excess in the number of acres actually contained in the land sold and conveyed, and the number of acres called for in the deed of the sheriff, it was not material in such sales and conveyances, because a sheriff is not selling his own land, but another's, and is neither bound, nor presumed to know the measurement or quantity of it. The remedy for such a mistake in a bargain and sale between private parties, is usually in chancery, but even then, only when the land is bought and sold for so much as is particularly stated as to quan-

tity, or at a stipulated price per acre. But when it is sold in gross for a certain sum, and is described as containing so many acres, more or less, or a specific number of acres by computation, it is only regarded as matter of description, and not as of the essence of the contract, and it will consequently neither vitiate, invalidate, or affect the sale. 4 *Kent's Com.* 466. 4 *Mason's Rep.* 414: 6 *Cow.* 706. 1 *Caines' Rep.* 493. *Hild. on Vendors*, 30, 316. 2 *Washb. on Real Prop.* 630.

*Layton*, replied.

*The Court, Gilpin, C. J., charged the jury.* It is contended by the counsel for the plaintiffs, that the levy of the sheriff under the *fi. fa.* issued in this case, was an illegal or void levy—first, because, as he alleges, it does not include *all* the land of which James A. Harris died seized ; and secondly, because the description of the land, contained in the levy, is too general, indefinite and uncertain, to identify the land, and that, therefore, the levy was insufficient and void.

Now as to the first ground of objection, we say to you that the objection comes too late.

It might have been taken at the return term of the levy, to wit, at the Apr. T. 1851, and the *inquisition* and condemnation would have been set aside upon its being shown to the court that all the lands had not been levied upon ; but not having taken it then, it can not be taken now ; because, it is a rule of this court, that no objection to the inquisition can be taken after the return term of the *fi. fa.* and inquisition, except in the special case of want of notice. Nor can any objection be taken to the sale, for the purpose of invalidating or setting it aside after the term to which the sale is returned. If the objection is not taken at the return term of the writ, the sale is affirmed as matter of course, and is final in its character and effect. And, therefore, we say to you that the plaintiff can not avail himself of this objection at this late day, nor in this case.

The *second* ground of objection to the levy, is, that it is too *general, indefinite* and *uncertain.*

Now, in regard to this objection, it is proper to advert to the statute law of this State, which prescribes the duty of the sheriff in respect to levying on land and holding of inquisitions.

Section 48 of chapter 111, which defines the duty of the sheriff on this point is very general in its terms, and gives the sheriff great latitude in describing the land levied on. Its language is, " If there has been a levy or seizure of land, the sheriff's return shall specify the principal improvements thereon, if any, as well as the known, or *computed* quantity, and situation thereof." Now, are the requirements of this provision of the statute, satisfied by the return of the sheriff? He is to specify the principal improvements, if any, and he returns that there were no improvements on the land. He is to state the *known* or *computed* quantity of the land. If he knows the exact quantity, it his duty to state it ; if he does not know the exact quantity, he is required to state the estimated, computed or reputed quantity, the words ' known ' and ' computed, being used in the act in contradistinction to each other ; the one as an ascertained and exact quantity, and the other as an unascertained, uncertain, but estimated quantity. If, in the absence of fraud, the sheriff erred in regard to the quantity, it is not material, it does not vitiate or render void the levy or return. He is also required to state where the lands are situate ; and he has done so, by describing them as being in Dagsboro Hundred, in this County, adjoining lands of Joseph Kollock and others.

The statute, as I have already stated, is general in its terms. It does not require a special or particular description. A general description is sufficient, if such description identifies the land and its locality.

Entertaining, as we do, this view of the true construction and meaning of the statute, we are bound to say to you, that the levy and description, made and returned by the sheriff, are valid and sufficient in law, and that the

plaintiff's objection on this ground, can not avail him in this case.

It is contended by the counsel for the defendant that the several pieces or parcels of land, purchased by James A. Harris at different times, and from different persons, and of which he died seized, and which are delineated on the plats which have been submitted to you, adjoined each other, and constituted in fact one tract of land, and were so held by James A. Harris at the time of his decease. On the other hand, the counsel for the plaintiffs contends that these several pieces or parcels did not so adjoin each. other as to constitute one tract, but were distinct and separate parcels, and were so held by Mr. Harris at the time of his death.

It will be for you, gentleman of the jury, to determine from the evidence before you, which of these two propositions or positions, is the true one ; for upon the solution of the question, involved in these propositions, must depend your verdict.

The description of the land levied on, as recited in the *Venditioni Exponas*, and set out in the sheriff's deed--namely "No 2, a certain *tract* or parcel of land situate in Dagsboro Hd. and county of Sussex, containing 140 acres, *more or less*, and no improvements, *adjoining lands* of Joseph Kollock and others, a part of which is cypress swamp," is sufficient to cover and include *all the lands* of which James A. Harris died seized situate in Dagsboro Hundred in this County, which adjoined lands of Joseph Kollock and others, upon which, at the time of the levy, there were no improvements, and a part of which was a cypress swamp. And the fact, that the tract contained more than 140 acres will not, of itself, vitiate or avoid the sale ; and the purchaser, the defendant in the case, is entitled to all the lands which are fairly included in the description contained in the levy, although the quantity may exceed 140 acres. For where a *tract* of land is put up and sold as such by the sheriff, that is, sold as a tract of so much land, " more or less," the purchaser takes the whole tract, without reference to the computed quantity which it is said to contain.

The question therefore you are called upon to determine according to the evidence, is, whether the land in dispute constituted an adjoining part of the lands of which James A. Harris died seized, situate in Dagsboro Hd. in this County which adjoined lands of Joseph Kollock and others. If you shall be satisfied from the evidence that such is the fact, then your verdict should be for the defendant.

On the other hand, if you are satisfied from the evidence, that the land in dispute did not constitute an adjoining part of the lands of which James A. Harris died seized, situate in Dagsboro Hundred in this County, which adjoined lands belonging to Joseph Kollock and others, your verdict should be in favor of the plaintiffs.